**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | |
|---|---|
| ELMINIO ORTIZ, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| THE CITY OF NEW YORK, THE CITY OF | : |
| NEW YORK DEPARTMENT OF | : |
| CORRECTION, NEW YORK CITY | : |
| DEPARTMENT OF HEALTH AND MENTAL | : |
| HYGIENE, NEW YORK CITY HEALTH AND | : |
| HOSPITALS CORPORATION, BELLEVUE | : |
| HOSPITAL CENTER, MANHATTAN | : |
| DETENTION CENTER, NORTH INFIRMARY | : |
| COMMAND/ANNEX AT RIKERS ISLAND, | : |
| DR. DOLORES CURBELO, CORRECTION | : |
| OFFICER "JOHN" HOWELL, CORRECTION | : |
| OFFICER "JOHN" HARRIS, CAPTAIN | : |
| "JANE" THOMAS, "JOHN DOES NOS. 1–20," | : |
| | : |
| Defendants. | : |

**OPINION & ORDER**

**12 Civ. 3118 (HB)**

-------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge[1]:**

      Before the Court is a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Elminio Ortiz ("Plaintiff") seeks to recover compensatory and punitive damages against numerous institutional and individual defendants; all of whom, Plaintiff alleges, played a role in Plaintiff's mistreatment while in the custody of the New York City Department of Corrections and other related institutions. Plaintiff brings suit pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, as well as Title II of the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. In addition to these federal causes of action, Plaintiff asserts state tort claims for negligent medical care; negligent hiring, training, supervision, and retention; premises liability; intentional infliction of emotional distress; and conversion. For the following reasons, the defendants' motion to dismiss is GRANTED in part and DENIED in part.

---

[1] John Runne, a second-year student at Brooklyn Law School and a Summer and Fall 2012 intern in my Chambers, provided substantial assistance in researching and drafting this opinion

**Background**

Plaintiff brings suit against numerous municipal and individual defendants. In all, Plaintiff is suing: The City of New York; the New York City Department of Health and Mental Hygiene ("DOHMH"); the New York City Health and Hospitals Corporation ("NYHHC"); the Bellevue Hospital Center; the New York City Department of Correction ("NYDOC"); the Manhattan Detention Center; the North Infirmary Command/Annex at Rikers Island; and the agents, servants and/or employees of these institutions, including but not limited to; medical personnel, such as the Medical Director (unnamed), Dolores Curbelo, M.D., physicians, nurses, therapists, other medical staff, and John Does 1 – 10; and NYDOC personnel such as the Warden (unnamed), grievance committee members, Corrections Officer ("CO") "John" Howell, CO "John" Harris, Captain "Jane" Nicholas, Captain "John" Thomas, John Does 11–20.

For two periods of time between September 2007 and September 2009, Plaintiff was under the defendants' "control and care." Compl. ¶ 71–72. From September 2007 to February 25, 2009, Plaintiff was held at Rikers as a pre-trial detainee. *Id.* Plaintiff returned to the defendants' custody for approximately one month beginning on September 13, 2009; Plaintiff had been transferred on a temporary basis from the New York State Department of Correction and Community Supervision.[2] *Id*. While in the defendants' custody, Plaintiff spent the majority of his time housed in Dorm 3 of the Northern Infirmary Command/Annex at Rikers Island. *Id.* ¶ 73. The North Infirmary Command/Annex is a facility for inmates that "require medical services . . . or other assistance with their daily living." *Id*. Plaintiff also alleges that he spent time in the Manhattan Detention Center and the George Motchan Detention Center at Rikers Island. *Id*.

Plaintiff is an above-the-knee amputee and, in order to ambulate, requires the assistance of a prosthetic leg or wheelchair. Compl. ¶ 71–72. Shortly after he began his first stretch of time in the defendants' custody in September 2007, Plaintiff began to complain to NYDOC personnel about the condition of his prosthetic leg. Plaintiff alleges he experienced pain, discomfort, and impaired mobility from the "exposed metal and bolts" on the prosthesis where it attached to his leg. *Id*. ¶ 74. On three separate occasions, Plaintiff consulted with doctors regarding the condition of his prosthetic leg. Plaintiff does not name the doctors with whom he consulted as individual defendants in this action. On October 15, 2007, Plaintiff saw Dr. Michael Wieder,

---

[2] Plaintiff does not name the New York State Department of Correction and Community Supervision as a defendant in this action.

M.D., a DOHMH employee. *Id.* ¶ 75. Plaintiff alleges that Dr. Wieder diagnosed an infection at the point where the prosthesis came in contact with Plaintiff's leg and "directed . . . the prosthetic [sic] be repaired." *Id.* The defendants did not act upon Dr. Wieder's order and did not repair the prosthesis. *Id.* ¶ 76. On November 19, 2007, Plaintiff saw Dr. Joseph Thomas, M.D., another DOHMH employee. *Id.* ¶ 77. Plaintiff avers that Dr. Thomas stated that the prosthesis was unsalvageable and directed that it be replaced. *Id.* Like with Dr. Wieder's order, the defendants failed to act upon Dr. Thomas's order and replace the prosthetic leg. *Id.* ¶ 78. Sometime in January, 2008, Plaintiff was transported to Bellevue Hospital where he saw Dr. Jeffery Van Gelderen, M.D. *Id.* ¶ 79. Dr. Van Gelderen concurred with Dr. Thomas's assessment and directed the prosthesis be replaced. *Id.* Dr. Van Gelderen further provided Plaintiff with a wheelchair and authorized Plaintiff to use the wheelchair until the prosthetic leg was replaced. *Id.* No action was taken pursuant to Dr. Van Gelderen's order until some six months later on April 22, 2008, when Plaintiff was measured and fitted for a new prosthesis. *Id.* ¶ 82. Despite the fitting session, Plaintiff never received the new prosthesis and instead continued to rely upon his deteriorated prosthesis and the wheelchair. *Id.* ¶ 83. Throughout this time, Plaintiff claims that he repeatedly complained of his condition, including voicing grievances to Dr. Dolores Curbelo, M.D., the medical director of NYDOC facilities. *Id.* ¶ 74.

On August 13, 2008, NYDOC staff, including CO "John" Harris, Captain "Jane" Nicholas, Captain "John" Thomas, and John Does 11–20, seized Plaintiff's wheelchair. *Id.* ¶ 84. The seizure of the wheelchair left Plaintiff only with the use of his tattered prosthesis. *Id.* The next day, Plaintiff fell and sustained injury to his shoulder, wrist, and back as he attempted to shower on one leg. *Id.* ¶ 86. Plaintiff alleges that the shower lacked hand rails, grab bars, rubber mats, or "any other means of assistance for disabled inmates . . . ." *Id.* Whether Plaintiff had previously showered with the assistance of his prosthesis or in his wheelchair is not disclosed in the complaint.

On January 22, 2009, NYDOC staff, including CO "John" Howell and Correction Defendant John Does 11–20 conducted a search of Plaintiff's cell. *Id.* ¶ 87. During the search, these defendants inspected the prosthetic leg and removed its synthetic and foam cover, thereby "rendering it unusable." *Id.*

It was only after Plaintiff transferred out of NYDOC custody on February 25, 2009, some ten months later after being fitted for a new prosthesis, that his treatment improved. *Id.* ¶ 90. On

September 13, 2009, Plaintiff was transferred on a temporary basis back into NYDOC custody. Before being admitted back into the defendant's facilities, Plaintiff underwent a physical examination. *Id.* ¶ 93. During this evaluation, the NYDOC confiscated the treaded shoes Plaintiff received while in state custody and replaced them with NYDOC's standard-issue, non-treaded shoes. *Id.* Soon thereafter, on September 23, 2009, Plaintiff slipped between two beds on "sloped flooring and/or a broken tile" in Dorm 3 of the North Infirmary Command/Annex at Rikers Island and sustained injuries. *Id.* ¶ 95. Plaintiff asserts that the lack of traction in his new shoes caused him to slip and fall. *Id.* ¶ 97.

The present action is Plaintiff's second attempt at recovery. Plaintiff first brought a near-identical set of claims in the Eastern District before Judge Sterling Johnson in November, 2009. In March, 2012, that Court dismissed Plaintiff's claims, neither with nor without prejudice, pursuant to FRCP 12(b)(3). *Ortiz v. City of New York*, No. 09-CV-4215 (E.D.N.Y. Mar. 30, 2012), ECF No. 32. The Court noted that Rikers Island is part of Bronx County and therefore falls within the Southern District's jurisdiction pursuant to 28 U.S.C. § 1391. *Id.* Plaintiff moved to transfer his case to the Southern District on the same day Judge Johnson dismissed the case. Judge Johnson later denied Plaintiff's motion for transfer. *Ortiz v. City of New York*, No 09-CV-4215 (E.D.N.Y. Apr. 4, 2012), ECF No. 33.

### Discussion

## I.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The requirement that the court accept all factual allegations as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 679.

The defendants' grounds for dismissal are fairly straightforward. The gist of their argument is that the conduct giving rise to Plaintiff's constitutional claims occurred outside of

the relevant statutes of limitations, and thus Plaintiff's federal causes of action are time-barred. In the alternative, the defendants argue that Plaintiff's federal claims are insufficiently pled. If either argument held true, they argue, this Court must dismiss the federal claims and should decline to exercise supplemental jurisdiction over the remaining state claims. In the event that this Court does not dismiss Plaintiff's federal claims, the defendants ask this Court to nonetheless exercise its discretion and decline to hear Plaintiff's state tort claims. The defendants, however, do not challenge the pleadings or merits of the pendant state claims.

## II.     Section 1983 Claims

Plaintiff raises several § 1983 claims and asserts that, while under their custody, various combinations of the named defendants, his First, Fourth, Eighth, and Fourteenth Amendment rights were violated.[3] The statute provides a private cause of action against state actors that deprive one of his rights afforded by federal law and the Constitution. *See* 42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must show: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation, [and]; (4) damages.'" *Rahman v. Fisher*, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). "A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights." *Id.* (citing *Martinez v. California*, 444 U.S. 227, 285 (1980)).

As a threshold matter, I reject Defendants' argument that Plaintiff's § 1983 claims are time-barred. The defendants assert that the majority of the alleged conduct giving rise to Plaintiff's § 1983 claims fall outside of the statute of limitations. Any conduct that occurred while Plaintiff was temporarily held by NYDOC in September 2009, the defendants argue, is insufficient to sustain any claims. Plaintiff entered into NYDOC custody in September 2007 and filed his first complaint in the Eastern District on October 10, 2009. Upon its dismissal on March 30, 2012, Plaintiff re-filed a nearly identical complaint in the Southern District in early April 2012.

Plaintiff's § 1983 claims are subject to a three-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989) ("[W]here state law provides multiple statutes of limitations

---

[3] As noted in *Bell v. Wolfish*, the Eighth Amendment does not directly apply to pretrial detainees. *See* 441 U.S. 520, 535 n.16 (1979), Pretrial detainees are entitled to equivalent constitutional protection from the Fourteenth Amendment's due process clause.

for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."); *see also* N.Y. C.P.L.R. § 214(5) (imposing three year statute of limitations on personal injury actions). In addition to adhering to the state's statute of limitations, § 1983 actions are subject to the state's tolling rules. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) ("The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its tolling rules . . . , unless applying the state's tolling rules would defeat the goals of the federal statute at issue." (internal quotation marks omitted)). New York's tolling rule, in pertinent part, states:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

N.Y. C.P.L.R. § 205(a). As one sister court has noted, "[n]either § 1983's chief goals of compensation and deterrence . . . or its subsidiary goals of uniformity and federalism would be defeated by applying § 205(a)'s tolling rule." *Gashi v. County of Westchester*, No. 02 CIV. 6934 (GBD), 2005 WL 195517 (S.D.N.Y. Jan. 27, 2005). I concur. Plaintiff's original action in the Eastern District was dismissed on venue grounds, not because Plaintiff "failed to obtain personal jurisdiction over the defendant[s]" or "for [Plaintiff's] neglect to prosecute the action." N.Y. C.P.L.R. 205(a). Consequently, I find that Plaintiff's § 1983 claims based upon all of Defendants' alleged conduct is timely pursuant to N.Y. C.P.L.R. 205(a).

###### a.    Deliberate Indifference Claim

Plaintiff's first § 1983 claim asserts that all named defendants exhibited deliberate indifference towards his serious medical needs. As a pretrial detainee, Plaintiff's claim for deliberate indifference arises under the Fourteenth Amendment. The analysis of his claim, however, "involves the same test as that used to analyze claims by convicted inmates under the Eighth Amendment." *Mayo v. County of Albany*, 357 F. App'x 339, 341 (2007). "The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes, which includes punishments that 'involve the unnecessary and wanton infliction of pain.'" *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Gregg v. Georgia,* 428

U.S. 153, 173 (1976)). Under the Eighth Amendment, prison officials have a duty to provide inmates adequate medical care. *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir. 2006). A concept that from a reading of the Complaint appears to have been lost on those responsible here.

In order to demonstrate that Plaintiff's constitutional rights were infringed, he must show that he suffered from an objectively serious medical condition and that his minders acted with deliberate indifference in addressing his condition. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether a medical condition is sufficiently serious include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (internal quotation marks omitted). Applying this framework, I find Plaintiff's allegations support the conclusion that he suffered from a sufficiently serious medical condition. On multiple occasions, doctors ordered Plaintiff's prosthetic leg either be replaced or repaired. Plaintiff's tattered prosthesis caused infection, and its disrepair prolonged his pain and decreased his mobility. *Cf. id.* at 702 (finding the plaintiff's allegations of extreme oral pain, deteriorating teeth, and an inability to chew properly were sufficiently serious as a medical condition to survive a motion to dismiss).

Upon demonstrating that his condition was sufficiently serious, Plaintiff must further show that "a particular defendant 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "'Deliberate indifference' describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the very purpose of causing harm or with knowledge that harm will result." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotation marks omitted). "[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock*, 315 F.3d at 164. Plaintiff alleges throughout the complaint that he repeatedly complained about the condition of his prosthesis and his leg. However, Plaintiff's allegations fall short of successfully demonstrating that all named defendants were aware of, and yet disregarded, Plaintiff's condition. Plaintiff's allegations convince me that only the Bellevue Hospital Center, where Plaintiff received his consultations; the NYDOC, which includes the North Infirmary Command/Annex at Rikers Island where

Plaintiff was primarily housed; and Dr. Curbelo, COs Harris and Howell, and Captains Nicholas and Thomas, all of whom received Plaintiff's complaints, were sufficiently aware of Plaintiff's condition. Despite this awareness, these defendants never addressed Plaintiff's condition and in some instances made it worse. Consequently, Plaintiff's claim of deliberate indifference remains but is dismissed against all other defendants.

      **b.**    **Retaliation Claim**

Plaintiff brings a § 1983 First Amendment retaliation claim against CO Harris, Captains Nicholas and Thomas, and Corrections Officer John Does, alleging that these defendants retaliated against Plaintiff's repeated complaints and that they did this by confiscating Plaintiff's wheelchair and crutches. Plaintiff asserts a second retaliation claim against CO Howell and John Does 11–20 for the search and seizure of Plaintiff's cell and the subsequent destruction of Plaintiff's prosthesis, claiming that the defendants' conduct was in retaliation for Plaintiff's complaints. To maintain a § 1983 First Amendment retaliation claim, Plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*. 239 F.3d 489, 492 (2d Cir. 2001) (citations omitted), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "For a retaliation claim to survive a motion to dismiss, it must be 'supported by specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Edwards v. Horn*, No. 10 CIV. 6194 RJS JLC, 2012 WL 760172 at * 12 (S.D.N.Y. Mar. 8, 2012) (quoting *Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000)). Courts are instructed to "approach such retaliation claims with skepticism and particular care, since virtually any adverse action taken against a prisoner by a prison official—even those not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Smith v. City of New York*, No. 03 CIV. 7576 (NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (internal quotation marks omitted); *accord Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Plaintiff's pleadings for this claim, while to say the least troubling, are insufficient to survive the motion to dismiss. Specifically, Plaintiff fails to establish the necessary causal link between Plaintiff's complaints and the alleged retaliatory conduct. Courts may consider several factors to determine whether a causal relationship between a plaintiff's protected activity and the retaliatory action, including: "(i) the temporal proximity between the protected activity and the

alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon,* 58 F.3d at 872–73). Plaintiff asserts that the destruction of Plaintiff's prosthetic leg and the seizure of his wheelchair and crutches were "in retaliation for the numerous complaints, grievances and notices of claim filed by Plaintiff." Compl. ¶ 188–89. However, unlike in *Smith v. City of New York* where the plaintiff's cell was searched and his legal papers destroyed only hours after he served corrections officers with summons and complaints, here, Plaintiff does not provide any factual or temporal link for me to attribute the conduct of these defendants staff to Plaintiff's complaints. 2005 WL 1026551, at *3. Plaintiff's pleadings fail to disclose any aberrations in his disciplinary record, any connection in time between his grievances and alleged misconduct, or any statements by the implicated defendants attributing the motivation behind their behavior to Plaintiff's complaints. *See Baskerville*, 224 F. Supp 2d at 732–33 (finding that the plaintiff's failure to establish temporal link was overcome by a showing of frivolous misbehavior reports and defendants' comments linking their retaliatory actions to the plaintiff's protected activity). Such claims are to be treated with skepticism and, without more from the Plaintiff, I must dismiss his § 1983 First Amendment retaliation claim. Suffice it to say that in other than a prison setting, the allegations here could be sufficient to avoid a motion to dismiss.

> **c.     Search of Cell and Destruction of Prosthesis**

Plaintiff's final § 1983 claim asserts that the January 22, 2009, search of Plaintiff's cell and the subsequent destruction of his prosthesis constituted a violation of Plaintiff's Fourth Amendment rights. Plaintiff brings this claim against the City of New York, the NYDOC, the North Infirmary Command/Annex at Rikers Island, CO Howell, Captains Thomas and Nicholas, and John Does 11–20.

At the time of the search, Plaintiff was in the defendant's custody as a pretrial detainee. While, in general, the restraints imposed upon a pretrial detainee's constitutional rights are less severe than those imposed upon incarcerated inmates, this distinction is less meaningful in the context of Fourth Amendment claims where a facility's institutional security stands as a competing consideration. "Although pretrial detainees may have some residual privacy interests that are protected by the Fourth Amendment, the maintenance of prison security and the preservation of institutional order and discipline are essential goals that may require limitation or

retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."
*United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988) (internal citations and quotation marks omitted).[4] "Prison officials must be free to take appropriate action to ensure the safety of inmates. . . ," and so "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Consequently, a limitation on a pretrial detainee's Fourth Amendment rights is justified so long as it "rests on the twin-rationale of *objective* administrators insuring prison *security* . . . ." *United States v. Cohen*, 796 F.2d 20, 23–24 (2d Cir. 1986). Where, however, this rationale is not met, "a limitation imposed on prisoners' constitutional rights cannot stand . . . ." *Id.* at 24 (holding that because it was instigated by a prosecutor and not prison administrators, the search of a pretrial detainee's cell did not serve an institutional purpose and therefore could be challenged on constitutional grounds).

Plaintiff asserts that "without reasonable basis and in violation of regulation, procedure and protocol, [the defendants] authorized and/or performed an illegal and improper seizure of Plaintiff's personal possessions, . . . prosthesis, and medical equipment." Compl. ¶ 181. The search, seizure, and destruction of Plaintiff's prosthesis "was clearly unreasonably intrusive and abusive." Compl. ¶ 185. Despite averring that the implicated defendants' conduct fell outside proper search protocol, Plaintiff does not provide any factual allegations for me to infer that the search and inspection of his cell and prosthesis diverted from standard NYDOC procedures.

> The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials . . . [I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations[,] courts should ordinarily defer to their expert judgment in such matters.*"*

*Florence v. Bd. of Chosen Freeholders of County of Burlington*, 132 S. Ct. 1510, 1517 (2012) (internal quotation marks omitted) (holding that a policy of conducting strip-searches on arriving detainees, including the petitioner who was arrested for a minor offense, does not violate

---

[4] Plaintiff does not claim that the search of his cell and the seizure of his prosthetic leg constituted "punishment" in contravention of the Fourteenth Amendment's due process clause. To succeed on such a claim, Plaintiff would have to demonstrate an "expressed intent to punish on the part of detention facility" and that the inspection of his cell and prosthetic leg was not reasonably related to the maintenance of order and security within the jail. *Bell*, 441 U.S. at 538–39 (internal quotation marks omitted).

detainee's Fourth Amendment rights). Further, the deprivation of property, even if intentional, cannot support a due process § 1983 claim where "adequate state post-deprivation remedies are available." *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (finding that the seizure of inmate-plaintiff's package was not actionable pursuant to § 1983 because New York "affords an adequate post-deprivation remedy in the form of . . . a Court of Claims action"). Plaintiff, here, does not offer any factual support to suggest that this search was conducted for any reason other than the "the maintenance of prison security and the preservation of institutional order." *United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988). While I find the destruction of Plaintiff's prosthesis to be troublesome, I cannot conclude, based on Plaintiff's pleadings, that the inspection of his cell and Prosthesis were in contravention to his limited Fourth Amendment rights. Consequently, the defendants' motion to dismiss Plaintiff's claim that the defendants violated Plaintiff's Fourth Amendment rights is dismissed.

## III.    Monell Claim

Plaintiff seeks to impute liability upon the municipal defendants for engendering a custom or policy that enabled the deprivation of Plaintiff's constitutional rights. Municipal liability may be imputed

> (1) when the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers or (2) for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Bernshtein v. City of New York*, No. 11-0545-CV, 2012 WL 4040215 (2d Cir. Sept. 14, 2012) (internal quotation marks omitted) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694–95 (1978)). A plaintiff raising a *Monell* claim must establish the existence of the policy or custom as well as "a casual connection—an 'affirmative link'—between the policy and [the] deprivation . . . ." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985) (citations omitted). Plaintiff's pleadings must advance sufficient facts to clear the *Iqbal* and *Twombley* plausibility standard; boilerplate assertions of a policy that caused injury will not survive a motion to dismiss. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (collecting cases of insufficiently pled *Monell* claims).

Plaintiff's allegations of a municipal policy or custom, one that fostered the deprivation of his constitutional rights, do not surmount the pleading requirements, and Plaintiff's allegations

are too conclusory and do not provide this Court with a sufficient factual foundation to impute municipal liability. For example, Plaintiff contends, without factual support, that the "municipal defendants' actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of staff [abuse and neglect] will suffer no damage to his or her career." Compl. ¶ 163. But one might ask "where's the meat"; there are no supporting allegations. Likewise, I cannot accept that the policies and customs of municipal defendants were the "moving force" behind the constitutional violations without any facts to support this proposition. *Id.* ¶ 158. Consequently, Plaintiff's § 1983 *Monell* claim is dismissed.

## IV.    Conspiracy Claims

### a.    Section 1985

Plaintiff alleges that the defendants[5] conspired to deprive Plaintiff his constitutional rights and brings suit pursuant to 42 U.S.C. § 1985. For the following reasons, the defendants' motion to dismiss Plaintiff's § 1985 is granted.

In order to maintain a § 1985(3) claim, Plaintiff must plead:

 (1) a conspiracy[;] (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "Such claims . . . must be predicated upon a causal link between the conduct complained of and animus or invidious discrimination that is based upon the plaintiff's membership in a protected class." *Pabon v. New York City Transit Auth.*, 703 F. Supp. 2d 188, 202 (E.D.N.Y. 2010). "Claims of conspiracy that are vague and provide no basis in fact must be dismissed." *Mumin v. Johnson*, No. 07-CV-4973 (NG), 2008 WL 976268 (E.D.N.Y. Apr. 9, 2008).

Plaintiff's allegations are insufficient to sustain a § 1985 claim. Plaintiff contends that "the defendants, acting in concert, willfully denied and unreasonably delayed the plaintiff, a disabled inmate, equal protection of the law . . . ." Compl. ¶ 199. Aside from noting that the defendants acted in concert, Plaintiff fails to allege the existence of an agreement or to spell out the members of the conspiracy. Further, Plaintiff does not allege the existence of a conspiracy

---

[5] Plaintiff does not specify against whom he asserts this claim.

fueled by Plaintiff's membership in a protected class. Consequently, the defendants' motion to dismiss Plaintiff's § 1985claim is granted.

        **b.**     **Section 1986**

"Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under § 1985. Hence, a § 1986 claim is contingent on a valid § 1985 claim." *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996). Without a valid § 1985 claim, Plaintiff's § 1986 must be dismissed. The defendant's motion to dismiss Plaintiff's § 1986 claim is granted.

**V.**     **ADA and Rehabilitation Acts Claim**

Plaintiff alleges that, as public entities pursuant to ADA, 42 U.S.C. § 12131(a)–(b), the institutional defendants the City of New York, the NYDOC, the DOHMH, the NYHHC, the Bellevue Hospital Center, the Manhattan Detention Center, the George Motchan Detention Center, and the North Infirmary Command/Annex at Rikers Island, discriminated against Plaintiff and thereby ran afoul of the ADA, 42 U.S.C. § 12131, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Specifically, Plaintiff claims that these defendants discriminated against him by, among other things, exhibiting deliberate indifference towards his medical condition, "failing to provide . . . reasonable and adequate accommodations; . . . failing to repair and/or replace [the] prosthesis;" and by depriving Plaintiff methods to ambulate. Compl. ¶ 176. In addition to the defendants' arguments regarding the timeliness and sufficiency of Plaintiff's claims, they also argue that Plaintiff cannot maintain an ADA claim grounded in negligent medical care. The defendants cite *Alexander v. Galeno* in support of this proposition. No. 07 CIV 9662 RMB DFE, 2009 WL 3754254 (S.D.N.Y. Nov. 5, 2009) (dismissing inmate plaintiff's ADA claim based upon the pain management regime put in place after the plaintiff received multiple shoulder surgeries because the plaintiff failed to establish the defendant's disability-based discrimination). For the reasons below, the defendants' motion to dismiss this claim is granted in part and denied in part.

As a threshold matter, I find that Plaintiff's ADA and Rehabilitation claim is timely. Plaintiff's ADA and Rehabilitation Act claim is subject to a three-year statute of limitations. *See Maccharulo v. Gould*, 643 F. Supp. 2d 587, 592–93 (S.D.N.Y. 2009) (noting that Rehabilitation

Act and Title II ADA claims are "governed by the applicable state statute of limitations for personal injury actions"); *see also* N.Y. C.P.L.R. § 214(5) (imposing three year statute of limitations on personal injury actions). Plaintiff's complaint in the Eastern District was timely; and while the Court there dismissed on venue grounds on March 30, 2012, Plaintiff re-filed his complaint in the Southern District in early April 2012. New York's tolling rules apply to the present claim. *Cf. Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) ("The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its tolling rules . . . , unless applying the state's tolling rules would defeat the goals of the federal statute at issue."). The Second Circuit has expressed that the purpose of the ADA and Rehabilitation Acts are "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). Allowing the present action to proceed—albeit several years after the alleged discriminatory conduct—does not frustrate the statutes' goals of achieving a level playing field among those of differing abilities.

To demonstrate an ADA violation, Plaintiff must establish that: "(1) [he is a] "qualified individual[]" with a disability; (2) that the defendants are subject to the ADA; and (3) that [the] plaintiff[] [was] denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiff['s[] disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). The elements of a § 504 Rehabilitation Act claim are nearly identical, and require only that a plaintiff also demonstrate that "the benefit [in question] is part of a program or activity receiving Federal financial assistance." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (internal quotation marks omitted). For the purposes of this motion, Plaintiff has pled, and the defendants do not contest, that Plaintiff has a disability protected by the ADA and Rehabilitation Acts and that the implicated defendants are public entities subject to the ADA and Rehabilitation Acts.

Like with the causal deficiency in his First Amendment Retaliation claim, Plaintiff's ADA and Rehabilitation Act claim that is founded upon a deprivation of adequate medical treatment fails because Plaintiff cannot demonstrate that these services or benefits were denied to him "by reason of plaintiff's disabilities." *Henrietta D.*, 331 F.3d at 272. Plaintiff's allegations to this effect are conclusory; I find no support within the complaint to conclude that Plaintiff was deprived medical care because of his status as a qualified individual with a disability. However, I

believe that for the purposes of surviving a motion to dismiss, Plaintiff has sufficiently alleged that he was deprived of reasonable accommodations. "'Reasonable' is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce." *Fulton v. Goord,* 591 F.3d 37, 44 (2d Cir. 2009) (quoting *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 138 (2d Cir.1995)). "This requires a fact-specific, case-by-case inquiry . . . not only into the benefits of the accommodation but into its costs as well." *Id*. (internal quotation marks omitted). "[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Henrietta D.*, 331 F.3d at 276–76 (2d Cir. 2003). Plaintiff notes that his wheelchair was seized despite a doctor's order permitting its use, that a shower in which he fell lacked handrails or other means of assistance for someone with Plaintiff's disability, and that his treaded footwear was confiscated upon his return to Rikers. *See Shaw v. New York Dep't. of Corr. Servs.*, 451 F. App'x 18, 20–21 (2d Cir. 2011) (vacating district court's dismissal of an ADA claim where inmate-plaintiff alleged that defendants failed to reasonably accommodate his learning disability by allowing, for example, oral examinations or recorded lectures). Consequently, Plaintiff's ADA and Rehabilitation Acts claim survives this motion to dismiss but only for the alleged failure to provide reasonable accommodations.

## VI.   Plaintiff's Pendant State Claims and Request for Leave to Amend the Complaint

In his opposition brief, Plaintiff informally requests for leave to amend the complaint "in the event one or more claims are dismissed by [the] Court." Pl.'s Mem. Opp. 30. The decision to grant leave to amend is at the discretion of the Court. *Carter v. City of New York*, 11 CIV. 643 NRB, 2012 WL 1034914 (S.D.N.Y. Mar. 23, 2012). "The court should freely give leave when justice so requires," FRCP 15(a)(2), and "[a]bsent evidence of undue delay, bad faith or dilatory motive on the part of the [plaintiff], undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dept. of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). Finally, a court's decision to grant leave to amend "must be balanced against the requirement under Rule 16(b) that the Court's scheduling order

shall not be modified except upon a showing of good cause." *Velez v. Burge*, 11-2897-PR, 2012 WL 1889402 (2d Cir. May 25, 2012) (internal quotation marks omitted).

As noted above, I dismissed many of Plaintiff's claims because his pleadings lacked sufficient factual support. Before I grant Plaintiff's request for leave to amend, I first must understand how Plaintiff intends to cure the deficiencies of his pleadings. *See Hayden v. County of Nassau,* 180 F.3d 42, 51 (2d Cir.1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Consequently, I am denying Plaintiff's request for leave to amend but invite Plaintiff to write to the Court within ten days of this order and explain how he intends to amend the complaint.

In addition to his several federal claims, Plaintiff brings state tort claims for negligent medical care; negligent hiring, training, supervision, and retention; premises liability; intentional infliction of emotional distress; and conversion.[6] While the defendants do not challenge the merits of these claims, I am concerned that certain of them suffer from the same or similar deficiencies for which I dismissed certain federal claims. Plaintiff is therefore given an opportunity to explain why his state-based claims for negligent hiring, training, supervision, and retention and intentional infliction of emotional distress satisfy the requisite pleading standards. If Plaintiff chooses to pursue these claims, he must write the Court within ten days from date or they will be dismissed with prejudice.

### Conclusion

For the reasons stated above, the defendants' motion to dismiss Plaintiff's § 1983 claims for First Amendment Retaliation; Fourth Amendment unreasonable search and seizure; and municipal liability is GRANTED. Further, the defendants' motion to dismiss Plaintiff's §1985, § 1986, and ADA and Rehabilitation claim based upon deliberate indifference is GRANTED. The defendant's motion to dismiss Plaintiff's § 1983 claim for deliberate indifference as against specific defendants and Plaintiff's ADA and Rehabilitation Act claim for failure to provide reasonable accommodation is DENIED. Finally, the defendants' request that this Court decline to exercise supplemental jurisdiction over Plaintiff's state tort claims is DENIED. Plaintiff is

---

[6] The defendants ask this Court to exercise its discretion and decline to hear these claims. As an initial matter, I find that these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Exercising supplemental jurisdiction over these claims, therefore, is proper.

invited to explain why his state claims for negligent hiring, training, supervision, and retention and intentional infliction of emotional distress satisfy the requisite pleading standards. The Clerk of Court is instructed to close this motion and remove it from my docket.

SO ORDERED.

Date: _____

New York, New York

HAROLD BAER, JR.
United States District Judge